IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 22, 2002 Session

## MELVIN BONDS, JR., ET AL. v. MIKE EMERSON, ET AL.
## MIKE EMERSON, ET AL v. MELVIN BONDS, JR., ET AL

**A Direct Appeal from the Circuit Court for Haywood County**
**Nos. 3296 and 3305 respectively     The Honorable Clayburn L. Peeples, Judge**

-------

**No. W2001-00812-COA-R3-CV - Filed March 19, 2002**

-------

This is a personal injury case arising from an automobile accident involving a sixteen-year old driver and a police officer.  Officer, who was responding to a backup call, was allegedly driving 99 m.p.h. when driver pulled out of driveway.  In a bench trial, the trial court found driver 80% at a fault for the accident and the officer 20% at fault.  Driver has appealed.  Judgment vacated and remanded.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Modified, Vacated, and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Larry S. Banks, Brownsville, For Appellants, Mike Emerson, Vickie Emerson, Erica D. Emerson
T. Verner Smith, Jackson, For Appellees, Melvin Bonds, Jr. and Virginia Bonds
James I. Pentecost, Jackson, for Appellee, Haywood County, Tennessee

### OPINION

This cases arises out of an automobile accident which occurred on February 16, 1997, on Highway 70 West near the City of Brownsville.  That morning, Melvin Bonds ("Mr. Bonds"), an investigator with the Haywood County Sheriff's Department, an employee of Appellee Haywood County, received a call that another police officer needed assistance.  Mr. Bonds left his home in his unmarked police cruiser, and headed west on Highway 70, at speeds of close to 100 miles per hour.[1] Mr. Bonds testified that, when he left his home in his cruiser, he activated his blue lights and siren.

-------

[1]The record indicates that the posted speed limit at the accident site was 55 miles per hour, and that the area was residential.

However, one independent witness testified that Mr. Bonds was only using his siren intermittently, and two other independent witnesses testified that they heard no siren right before the crash.

At the same time Mr. Bonds was driving down Highway 70, the Appellant, Erica Emerson ("Ms. Emerson"), who was 16-years old at the time, had pulled her truck into a large, private driveway on Highway 70 in order to turn around. Ms. Emerson testified that she looked for traffic approaching from either direction on Highway 70, and then pulled out of the driveway. Ms. Emerson testified that she didn't see Mr. Bonds' cruiser before the impact.

Ms. Emerson claims that she didn't hear a siren before the accident, and on this point, there is conflicting evidence as to how loudly Ms. Emerson was playing her car radio at the time. Under oath, Ms. Emerson admitted that the radio was playing at the time of the accident, but she claims she had turned it down before re-entering the roadway. Other witnesses at trial claimed the radio was playing loudly after the accident occurred, and that someone at the scene turned it off.[2]

Mr. Bonds' cruiser struck Ms. Emerson's truck in front of the driveway. The force of the crash knocked Ms. Emerson's vehicle to a final resting point 75 feet from the point of impact. Mr. Bond's vehicle left 204 feet of skid marks. Experts for both sides calculated Mr. Bonds' speed at 99 miles per hour, and one expert opined that, if Mr. Bonds had been traveling at 80 miles per hour, he would have been able to avoid the accident.

On February 16, 1998, Mr. Bonds and his wife, Virginia, filed a complaint against Mike and Vickie Emerson, parents of Erica Emerson, and Erica Emerson (the "Emersons"). On April 20, 1998, the Emersons filed a complaint against Mr. Bonds individually, and against Haywood County. The parties agreed to consolidate the cases, and the order consolidating the cases set the matter as a bench trial, and dismissed the claim against Mr. Bonds, individually. At the bench trial in this matter, held November 7, 2000, the trial court announced its findings from the bench, which we quote:

> I find that the defendant, Erica Emerson, was negligent in that she failed to keep a proper lookout for other traffic properly upon the roadway. And I find that because of that, she failed to give the right of way to the plaintiff, Melvin Bonds, Junior, whose vehicle had the right of way as he traveled on a thorough (sic) highway.
> I find that that negligence was also the proximate cause of the collision as well as the injuries and damages sustained by both her and Mr. Bonds. I find that the appropriate T.C.A. statutes did require that she do that.
> I find that had she been keeping a proper lookout, she would have scene (sic) the approaching vehicle; that her view was

___

[2]There is also conflicting evidence in the record about whether Ms. Emerson was using her cell phone at the time of the crash. Although her phone records did not indicate any calls at the time of the impact, Mr. Bonds testified that he clearly saw Ms. Emerson with the phone to her ear before his car hit hers.

unobstructed for approximately 1,200 feet; and that even with Mr. Bonds traveling at an agreed upon speed of 99 miles per hour, she still had several seconds within which she could have and should have scene (sic) his vehicle.

I find that the evidence is inconclusive as to whether or not she was distracted by a cellular phone or loud music. And therefore, I have not considered that in any way in reaching my decision.

I find that Mr. Bonds was displaying his blue lights at the time of the impact, but I find the proof inconclusive with regard to whether or not his siren was activated. And, thus, my findings do not presume that an audible signal was operative.

I do find, however, that Mr. Bonds' speed was excessive even given the emergency situation, which I do find did exist, and that his speed did contribute to the accident. And I assign to Mr. Bonds a percentage of fault in the amount of 20 percent.

I feel that an appropriate award to Mr. Bonds for all his damages, pain, past, present, future, medical expenses and any other compensable loss should be set at $40,425, subtracting 20 percent from that for his fault. I would award him a judgment of $31,341.

Final judgment in this matter was entered on December 19, 2000, and a Consent Order Amending Final Judgment was entered on November 29, 2001, which disposed of Ms. Bonds' claims (which were not covered in the original Judgment).

The Emersons appeal and present the following three issues for review, as stated in their brief:

I. Whether or not Investigator Bonds, in the circumstances of this case, was entitled to the protection of T.C.A. § 55-8-108 to the extent that he could lawfully drive his uncertified, unmarked car at a speed of 99 miles an hour through a residential area while only using his siren in an intermittent fashion.
II. Whether or not the trial court properly allocated the percentage of fault in this case.
III. Whether or not the trial court's award of damages to Investigator Bonds was excessive under the circumstances.

For the following reasons, we affirm and modify the trial court judgment in this case and hold that both parties were each 50% at fault for the accident.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the

evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d).

The first issue Appellants raise is whether Mr. Bonds was entitled to the protection of the statute pertaining to emergency vehicles: T.C.A. § 55-8-108. That statute provides, in relevant part:

> (a) The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law . . ., may exercise the privileges set forth in this section, but subject to the conditions herein stated.
> (b) The driver of an authorized emergency vehicle may:
> \* \* \*
> (3) Exceed the speed limits so long as life or property is not thereby endangered. . . .
> \* \* \*
> (c) ***The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible and visual signals*** meeting the requirements of the applicable laws of this state, except that an authorized emergency vehicle operated as a police vehicle may be equipped with or display a red light only in combination with a blue light visible from in front of the vehicle.
> (d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of the driver's own reckless disregard for the safety of others.

T.C.A. § 55-8-108 (2001 Supp.) (emphasis added). The trial court found the proof regarding Mr. Bonds's issue of his siren "inconclusive," and the court states, "My findings do not presume that an audible signal was operative." Thus, the trial court found that the siren was not activated just prior to and at the time of the accident. In order for Mr. Bonds's police vehicle to be exempt from the rules required of other vehicles using the highway, the vehicle must have in operation both audible and visual signals, and if the emergency vehicle rule does not apply, Mr. Bonds was subject to the rules of the road and common law duties of the ordinary motorist. ***See Mayor and Aldermen of Town of Morristown v. Inman***, 342 S.W.2d 71 (Tenn. Ct. App. 1960). From the trial court's statements from the bench, he did not exempt Mr. Bonds from complying the rules of the road required of all citizens.

The next issue Appellants raise is whether the trial court properly allocated fault in this case. Although appellate courts generally give the trier of fact "considerable latitude in allocating percentages of fault to negligent parties," where the evidence preponderates against the trial court's findings, we may modify the allocation of fault. ***Wright v. City of Knoxville***, 898 S.W.2d 177, 181

-4-

(Tenn. 1995).[3]  In reviewing the allocation of fault, we review issues of fact *de novo* on the record of the trial court.  ***See id.***

In this case, we hold that the trial court did err in allocating Mr. Bonds 20% of the fault and allocating Ms. Emerson 80% of the fault.  Our review of Ms. Emerson's actions reveals that she was negligent, and that her negligence was a contributing cause of the accident.  Although Ms. Emerson testified otherwise, several witnesses at the scene claimed her radio was playing very loudly.  Similarly, the trial court found that Ms. Emerson had failed to keep a proper lookout when she re-entered the highway.  On this point, Ms. Emerson, herself, testified that she never saw Mr. Bonds coming.

In spite of Ms. Emerson's negligence, however, our review of the record indicates that Mr. Bonds' negligence was a significant factor in the accident.  Mr. Bonds was traveling 99 miles per hour in a 55 miles per hour zone which traversed a relatively populated residential area. The blue lights on Mr. Bonds' car were located inside the car, and Mr. Bonds's siren was not activated to warn other drivers.  As we have noted above, Mr. Bonds cannot rely upon the protections of T.C.A. § 55-8-108 because he was not using an audible signal, as the statute requires.  Since Mr. Bonds did not comply with the statute, we must treat him as any private individual would be treated in using the public highway.  As such, we believe Mr. Bonds was equally responsible for the accident.

We, therefore, hold that the evidence preponderates against the trial court's findings, and that both parties were equally at fault in causing the accident.  Under such a scenario, therefore, neither party should be entitled to recover for the negligence of the other.  ***See McIntyre v. Ballentine***, 833 S.W.2d 52, 57 (Tenn. 1992).  Because we so hold, there is no need for us to address the third issue presented regarding the amount of damages.

For the foregoing reasons, we affirm the judgment of the trial court holding both parties at fault, but we revise the percentages of fault and attribute 50% of fault to Emersons and 50% of fault to Melvin Bonds and Haywood County.  The judgment of the trial court awarding damages to Melvin Bonds is vacated, and judgment is entered for the defendants in each case.  The case is remanded to the trial court for such further proceedings as may be necessary.  Costs of the appeal are assessed one-half to Melvin Bonds and Haywood County and one-half to Vickie Emerson, Mike Emerson, and Erica Emerson, and their respective sureties.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.

---

[3]We point out, of course, that if this case had been tried by a jury, we would apply the more stringent "clearly erroneous" standard of review.  ***See also Cross***, 29 S.W.3d at 644-45.