IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 14, 2024 Session

## SANDRA EASLEY v. CITY OF MEMPHIS

**Appeal from the Circuit Court for Shelby County**
**No. CT-004777-18  Damita J. Dandridge, Judge**

_____

### No. W2023-00437-COA-R3-CV

_____

This is an appeal of a Governmental Tort Liability Act case and concerns a judgment received by the plaintiff, who stepped off of a curb in the middle of the block, not at the crosswalk, and was struck by a city-owned vehicle while attempting to cross between two stopped vehicles when the light changed. Having reviewed the record transmitted to us on appeal, we reverse the trial court's judgment that the city defendant is liable for the negligent hiring and retention of its employee because the record fails to show that evidence was introduced at trial in support of this claim.  Moreover, we reverse the trial court's allocation of fault, concluding that the evidence preponderates in favor of a finding that the plaintiff is at least 50% at fault. Because the plaintiff is accordingly barred from obtaining a recovery, we dismiss the case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Dale H. Tuttle, Memphis, Tennessee, for the appellant, City of Memphis.

Mari-Elizabeth Sanford, Memphis, Tennessee, for the appellee, Sandra D. Easley.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

This appeal concerns a negligence action filed by the Appellee, Sandra Easley, as a result of an incident in which an employee of the City of Memphis ("the City"), Paul Haynie, struck Ms. Easley with a city-owned pickup truck that he was operating.  The

incident occurred on December 8, 2017, when Ms. Easley stepped off the curb between two stopped vehicles in an attempt to cross A.W. Willis Avenue, near the intersection with North Main Street. As the light changed from red to green, the driver of the City vehicle took his foot off the brake, and as the vehicle began to move, Ms. Easley was struck by the right front bumper. Approximately forty feet from where Ms. Easley stepped off the curb, there was a stoplight and a crosswalk. The fact that Ms. Easley attempted to cross the street approximately forty feet from the nearby crosswalk is undisputed. In connection with this incident, Ms. Easley was ticketed for attempting to cross the street outside of the crosswalk.

Following the incident, Ms. Easley was taken to Methodist North Hospital via ambulance. The Prehospital Care Report prepared by the transporting emergency unit noted "an abrasion to the lower left leg below the knee[.]" The ambulance delivered Ms. Easley to "ER Non-Emergent," where her hip and knee underwent X-ray imaging. The imaging did not reveal any fractures. Ms. Easley was provided pain medication, as well as treatment to lower her blood pressure, before being discharged.

On December 12, 2017, Ms. Easley returned to the Methodist North Hospital emergency room. The associated medical records described Ms. Easley's chief complaint as "involved in a [motor vehicle crash] 4 days ago, here because she needs more time off work[.]" She underwent a CT scan of her left knee, the report of which reflected no evidence of fracture and little evidence of trauma. Ms. Easley's leg was bandaged, and she was given more pain medication. The treating physician did not provide a referral to physical therapy but instructed Ms. Easley to follow up with her primary care physician.

On December 18, 2017, Ms. Easley sought physical therapy at Healthone, a medical practice located in Memphis, Tennessee. Healthone's records reflected that Ms. Easley was referred to its practice by her lawyers, not a physician. Subsequently, a nurse practitioner associated with Healthone referred Ms. Easley to two separate imaging centers to receive magnetic resonance imaging ("MRI") of her back and left leg. According to Ms. Easley's testifying but non-treating physician, Dr. Apurva Dalal, the results of these two MRIs were "normal."

On October 18, 2018, Ms. Easley filed her complaint against Mr. Haynie and the City. She alleged negligence on the part of Mr. Haynie, asserting the City would be vicariously liable, while also alleging that the City had been directly negligent in hiring, supervising, and training Mr. Haynie.[1]

When Ms. Easley testified at trial, she initially contended that Mr. Haynie had stopped to permit a group of people and her to cross the street; however, she later testified that Mr. Haynie had stopped for a red light. Nevertheless, Ms. Easley testified that she was

---

[1] As discussed elsewhere in this Opinion, the trial court's judgment in this matter would ultimately make a specific finding that the City had been negligent in its "hiring and retention" of Mr. Haynie.

attempting to cross behind the other group of people but did not make it to the "middle ways of the truck" driven by Mr. Haynie before she was struck. She claimed the impact occurred on her waist area and that she landed on the right side of her body.

Concerning the actions of Mr. Haynie, Ms. Easley testified that he was looking at his phone while stopped at the red light. When asked if Mr. Haynie was "looking forward," she stated that she was not sure where he was looking, but also added the following: "I was watching him as I attempted to cross the road." Ms. Easley did not offer testimony as to whether she saw Mr. Haynie begin to move the truck before the impact.

Ms. Easley testified that, after the impact, she was knocked to the ground, but that she stood back up and walked to a Shell gas station nearby to where she had initially attempted to cross. She further stated that Mr. Haynie exited the truck and that he was on his phone. She testified that she asked Mr. Haynie if he knew that he struck her with the truck, but claimed that he "didn't say anything" in response. According to Ms. Easley, she then called 911.

Ms. Easley testified that she used crutches for a month after the accident and could not work for two weeks after the incident.

In his cross-examination of Ms. Easley, the attorney for the City asked Ms. Easley whether her testimony concerning her two weeks of absence from work was accurate. Ms. Easley responded that it was actually one week. When further inquiry was made into the status of her health, Ms. Easley confirmed that none of her scans had demonstrated a broken bone. Furthermore, Ms. Easley stated that Methodist North did not prescribe physical therapy; rather, she acknowledged that it was her lawyers who instructed her to go to physical therapy.

Before Ms. Easley closed her proof, Mr. Haynie's response to an interrogatory she had propounded to him during this litigation was read into the record, [2] in which Mr. Haynie had stated in pertinent part as follows: "Shortly before the incident, I was heading west on A.W. Willis Avenue. I was stopped behind two vehicles at the light . . . . When the light turned green, the two vehicles in front of me began to move. As I [let] my foot off the brake of the vehicle, the plaintiff suddenly and without warning walked into my truck."

The City called one witness, Mr. Haynie, in its defense. Mr. Haynie testified he was stopped in the curb lane of A.W. Willis Avenue, heading west, in the moments immediately before the incident. He also stated that he was stopped because of a red light, not to let anybody cross the street. In characterizing the incident itself, Mr. Haynie testified that, "[w]hen the light turned green, I let my foot off the brake, Ms. Easley stepped into my

---

[2] Ms. Easley's initial complaint included Mr. Haynie as a party to the lawsuit, but he was dismissed as a party prior to trial.

truck." He further testified that Ms. Easley "simultaneously" stepped off the curb when he released the brake. As to Ms. Easley's allegation that he was on his cell phone while operating the vehicle, he denied using his cell phone until after exiting the vehicle and speaking with Ms. Easley, after which he used his phone to dial 911.

During cross-examination, Mr. Haynie was questioned further concerning his use of a cell phone, but he did not alter his testimony. On redirect examination, Mr. Haynie confirmed he was never cited for using his cell phone, but he admitted that there were no other witnesses to independently verify his testimony.

In the resulting judgment following trial, the trial court found the City liable for Mr. Haynie's action of having struck Ms. Easley as she was attempting to cross the street. It further found that Mr. Haynie failed to yield the right of way to Ms. Easley, and that he failed to pay proper attention while driving when he struck her.

The trial court found that Ms. Easley's injuries were serious and required emergency treatment at Methodist North Hospital, diagnostic treatment, and physical therapy. The court determined that Ms. Easley incurred $22,432.95 in medical special damages, and that these bills were reasonable per Ms. Easley's expert witness, Dr. Apurva Dalal. As for other damages, the trial court found that Ms. Easley incurred $525.00 for a week's lost wages and awarded her an additional $67,307.85 for pain and suffering as well as loss of enjoyment of life. In support of the damages for pain and suffering, the court noted that Ms. Easley needed to be on crutches for a month and endured "a long and arduous treatment to recover from her injuries." The total sum of the court's award to Ms. Easley amounted to $106,580.06. The trial court found at one place in its written order that the City was 90% at fault in this matter, while attributing 10% of the fault to Ms. Easley.[3] Of further note, the trial court found as part of its judgment that the City had "committed negligence in the negligent hiring and retention of Paul Haynie."

The City now appeals from the trial court's judgment, raising multiple issues.

### ISSUES PRESENTED

In its appellate brief, the City presents the following issues for this Court's review, restated verbatim:

1. Whether the trial court erred in deciding Plaintiff was less than 50 percent at fault.
2. Whether the trial court erred in deciding Plaintiff carried her burden of proof by a preponderance of the evidence.

---

[3] As discussed later in this Opinion, in light of other findings detailed herein, the trial court's attempt to allocate fault was both incomplete and internally inconsistent.

3. Whether the trial court erred in deciding Plaintiff carried her burden of proof by a preponderance of the evidence and was entitled to a judgment for Appellant's negligent hiring and retention of employee Paul Haynie.
4. Whether the trial court erred in deciding Plaintiff carried her burden of proof by a preponderance of the evidence and was entitled to a judgment for future medical expenses, future mental anguish, "future injuries" and future emotional pain and suffering.
5. Whether the trial court erred in deciding Appellant's employee Paul Haynie failed to yield right of way.
6. Whether the trial court erred in deciding Plaintiff carried her burden of proof by a preponderance of the evidence that Plaintiff was entitled to an award of $106,580.06 for pain and suffering past and future medical expenses.
7. Whether the trial court erred in denying Appellant's Tennessee Rule of Civil Procedure 41.02 Motion for Involuntary Dismissal.

## STANDARD OF REVIEW

The standard of review in a non-jury case is de novo with a presumption of correctness accorded to the trial court's findings of fact. *Curry v. City of Hohenwald*, 223 S.W.3d 289, 291 (Tenn. Ct. App. 2007). Nevertheless, these findings shall be set aside if the evidence preponderates against them. *Cross v. City of Memphis*, 20 S.W.3d 642, 645 (Tenn. 2000). As an affirmative defense to its negligence, a defendant may allege that the plaintiff contributed to the injury at issue through their own negligent actions. *McIntyre v. Balentine*, 833 S.W.2d 52, 58 (Tenn. 1992). Tennessee has adopted a form of modified comparative negligence known as the "49 percent" rule. *Id*. at 57. As explained by our Tennessee Supreme Court, "so long as plaintiff's negligence remains less than the defendant's negligence the plaintiff may recover; in such a case, plaintiff's damages are to be reduced in proportion to the percentage of total negligence attributable to the plaintiff." *Id*.

## DISCUSSION

This case was tried before the trial court pursuant to the Tennessee Governmental Tort Liability Act, which is codified at Tennessee Code Annotated section 29-20-101 *et seq.* Although this legislative enactment generally reaffirms the grant of sovereign immunity afforded to governmental entities, it also removes immunity under certain circumstances. As the Tennessee Supreme Court has outlined:

> [I]n addition to reaffirming the general grant of immunity, the GTLA also enumerates certain statutory exceptions where governmental immunity is specifically removed. *Id.* § 29–20–202(a) (immunity removed for injuries resulting from the negligent operation of a motor vehicle or other equipment by a governmental employee in the scope of employment); *id.* § 29–20–

203(a) (immunity removed for injuries caused by a defective, unsafe, or dangerous condition on a public roadway or sidewalk); *id.* § 29–20–204(a) (immunity removed for injuries caused by dangerous or defective conditions associated with public structures or improvements); *id.* § 29–20–205 (immunity removed for injuries caused by the negligence of governmental employees with certain exceptions). Furthermore, the GTLA also lists specific types of claims for which immunity is not removed. *Id.* § 29–20–205(2) (immunity not removed for "[f]alse imprisonment ..., false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights"); *Hughes v. Metro. Gov't of Nashville & Davidson Cnty.,* 340 S.W.3d 352, 369–70 (Tenn.2011) (discussing the manner in which section 29–20–205(2) applies); *Limbaugh v. Coffee Med. Ctr.,* 59 S.W.3d 73, 84 (Tenn.2001) (same).

*Young v. City of LaFollette*, 479 S.W.3d 785, 790 (Tenn. 2015). In this case, as discussed below, Ms. Easley has sued the City pointing to alleged negligence on the part of Mr. Haynie. Ms. Easley has further alleged a claim for the City's alleged negligent hiring, supervision, and training of Mr. Haynie.

*Infirmity of Final Order*

We begin our substantive discussion by pointing to several points of confusion that the trial court's final order has generated. The final order on appeal contemplates two separate claims of negligence alleged by Ms. Easley. The first claim alleges negligence on the part of Mr. Haynie, for which the City is vicariously liable. The second claim alleges a direct claim of negligence on the part of the City for the negligent hiring, supervision, and training of Mr. Haynie. As a general rule, "[t]he Trial Court has the responsibility to apportion fault to anyone having a degree of culpability." *Lindgren v. City of Johnson City*, 88 S.W.3d 581, 585 (Tenn. Ct. App. 2002). For example, in the case where an employer is found both vicariously liable for an employee's actions and directly liable for its own negligence, the trial court must apportion fault between the plaintiff, employee, and employer. *Binns v. Trader Joe's E., Inc.*, --- S.W.3d ----, ----, 2024 WL 1503703, at *5-6 (Tenn. Apr. 8, 2024).

Here, the trial court found that the City was both directly negligent for the "negligent hiring and retention" of Mr. Haynie and vicariously liable for the negligence of Mr. Haynie as the driver. In this circumstance, the trial court should have apportioned fault among Mr. Haynie, the City, and Ms. Easley, because the City is, at least per certain conclusions appearing in the trial court's order, both directly and indirectly liable to Ms. Easley. And yet, the oral ruling finds Mr. Haynie 90% at fault for his negligent operation of a motor vehicle, holding the City vicariously liable, and Ms. Easley 10% at fault for crossing outside of a crosswalk, without determining the apportionment of fault to the City for the

negligent hiring claim.  However, in the immediate text appearing in the subsequent written order, the court does not attribute any percentage of fault directly to Mr. Haynie; instead, it attributes 90% liability directly to the City. Compounding the confusion related to this matter, the oral ruling is itself incorporated by reference into the written order.  In this case, we cannot discern a coherent apportionment of fault as to Mr. Haynie or the City with respect to the trial court's findings of negligence.  Clearly in our view, in light of the particular findings of negligence made therein, the trial court's final judgment fails to completely and correctly apportion fault among the parties.

Aside from the confusion and internal inconsistency that is connected to the trial court's order, we note that the record in this case does not even support the conclusion that the City was independently negligent in relation to a claim for, as found by the trial court, "negligent hiring and retention."  Of note, in addition to the typical elements of a negligence claim, a plaintiff pursuing a claim for negligent hiring and retention must show that the employer knew, or should have known, that the employee was unfit for their job. *Brown v. Mapco Express, Inc.*, 393 S.W.3d 696, 703 (Tenn. Ct. App. 2012). We cannot find any evidence in the record demonstrating that the City knew or should have known that Mr. Haynie was unfit for his job.  The trial court's written order simply states that the City "committed negligence in the hiring and retention of Paul Haynie[,]" without providing any findings of fact that would appropriately support such a conclusion. Frustratingly, the court's oral ruling, which was incorporated into the final order by reference, fails to shed any further light, simply stating as follows: "The Court also finds if the City of Memphis knew or exercised . . . due diligence in a reasonable inquiry [it] should have known of Paul A. Haynie's ability to drive in an illegal, unlawful, negligent and reckless manner."  The trial court fails to point to any evidence introduced at trial supporting this finding, nor could it have done so.

Indeed, upon our review of the record, we cannot discern where *any* evidence of Mr. Haynie's alleged unfitness was ever introduced during the trial. In keeping with our observation, the City's brief argues, correctly, that no evidence was ever advanced at trial in support of a claim for negligent hiring or retention. Indeed, it is unclear this claim was even meaningfully pursued by Ms. Easley, outside of merely including it in her pleadings. Because there is a complete lack of evidence supporting any claim for negligent hiring or retention, we conclude that the trial court's ruling in Ms. Easley's favor on that issue must be reversed.

*Allocation of Fault*

As touched on earlier, the trial court's order admits of much confusion concerning the actors supposedly at fault in connection with the incident and the specific apportionment of fault among those actors in relation to same.  Moreover, through our disposition above, we have held there was not a basis to hold the City independently at fault by way of a claim for negligent hiring or retention. In any event, we note that, through

its first issue on appeal, the City has challenged the trial court's apportionment of fault by specifically asserting that the court erred in deciding Ms. Easley was less than 50% at fault for the incident. Having reviewed the record transmitted to us on appeal, we agree with the City. Indeed, having reviewed the evidence pertaining to the alleged fault of Mr. Haynie and the alleged fault of Ms. Easley, we agree that the evidence preponderates in favor of a finding that Ms. Easley was at least 50% at fault for the incident at issue. Although, no doubt, the trial court is accorded considerable latitude in apportioning fault among parties, the appellate courts have had occasion to modify these percentages when the evidence preponderates against the allocation of fault.[4] "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *Hardeman Cnty. v. McIntyre*, 420 S.W.3d 742, 749 (Tenn. Ct. App. 2013) (citing *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005)).

For instance, in *Bonds v. Emerson*, we examined a trial court's allocation of fault in a personal injury case involving an automobile accident between two drivers. The plaintiff, a police officer, was allegedly traveling around ninety-nine miles per hour when the defendant, a sixteen-year-old driver, pulled out of a driveway onto the roadway, whereupon the collision occurred. *Bonds v. Emerson*, 94 S.W.3d 491, 491 (Tenn. Ct. App. 2002). The trial court found that the plaintiff police officer was 20% at fault and the defendant 80% at fault. Because the plaintiff did not have his siren activated, he was not protected by the Tennessee statute entitling emergency vehicles to exceed the speed limit and was treated as "any private individual . . . using the public highway." *Id*. at 493-94; *see* Tenn. Code Ann. § 55-8-108. In assessing each party's respective negligence, we noted that the plaintiff was traveling at an excessive speed in a "relatively populated residential area." *Bonds*, 94 S.W.3d at 494. As to the defendant, we highlighted that several witnesses claimed her radio was playing very loudly and that the trial court found she failed to keep a proper lookout, which was supported by the defendant's testimony stating she did not see the plaintiff approaching. *Id*. In light of the evidence presented by the record, we reapportioned the fault to 50% for each party, thereby denying recovery. *Id*. at 495.

Turning to the case at hand, we conclude that the preponderance of the evidence demonstrates Ms. Easley is certainly more than 10% at fault for the incident; in fact, as previewed earlier, and discussed below, the evidence clearly preponderates in favor of a finding that she is at least 50% at fault. In reaching this conclusion, we note that it is undisputed that Ms. Easley attempted to cross the street, between two vehicles, approximately forty feet from a crosswalk and stoplight, and that she would not have been struck by the City's truck without attempting to cross in such a fashion. Section 55-8-135 of the Tennessee Code Annotated states that "[e]very pedestrian crossing a roadway at any

---

[4] *See Cross v. City of Memphis*, 20 S.W.3d 642, 645 (Tenn. 2000); *Robinson v. State*, No. E2011-01540-COA-R3-CV, 2012 WL 3090930, at *16 (Tenn. Ct. App. July 31, 2012); *Bonds v. Emerson*, 94 S.W.3d 491, 495 (Tenn. Ct. App. 2002).

point other than within a marked crosswalk or within an unmarked crosswalk at an intersection *shall yield the right-of-way* to all vehicles upon the roadway." Tenn. Code Ann. § 55-8-135(a) (emphasis added). Ms. Easley does not dispute she attempted to cross A.W. Willis Avenue approximately forty feet from a nearby crosswalk and that she received a ticket for doing so. Although the trial court's final order concluded that Mr. Haynie failed to yield the right of way to Ms. Easley, we have noted in a previous opinion that, "it must be said as a matter of law that one crossing a street 42 feet from . . . a crosswalk is not within it and, consequently, does not have the right of way over vehicles." *Seahorn v. Karr*, 242 S.W.2d 331, 334 (Tenn. Ct. App. 1951). As such, we conclude that Ms. Easley failed to yield the right of way to Mr. Haynie, in violation of section 55-8-135 of the Tennessee Code Annotated. With this in mind, it is evident that the premise from which the trial court viewed the actions in this case was misguided. Ms. Easley simply, as a matter of law, did not have the right of way.

Typically, a plaintiff may not recover when their violation of a statute precipitates the alleged incident. *Cook By & Through Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994). However, we have previously held that such a violation by a pedestrian is not an automatic bar to their recovery, but rather, it is an element to consider in determining the pedestrian's negligence. *DeRossett v. Malone*, 239 S.W.2d 366, 376-77 (Tenn. Ct. App. 1950). To that end, we have previously found that the extent of a pedestrian's awareness of her surroundings, and the amount of traffic present in the road, are informative in measuring the degree of the pedestrian's negligence. *Zamora v. Shappley*, 173 S.W.2d 721, 721-23 (Tenn. Ct. App. 1941).

Here, Ms. Easley stepped onto a busy street that was populated by numerous vehicles. Although Ms. Easley testified to looking to her left at Mr. Haynie, she offered conflicting testimony about whether Mr. Haynie was stopped to let pedestrians pass in front of him or if he was stopped because the light was red. Although she claimed she could observe Mr. Haynie using his phone, she also stated that she could not see where he was looking. This conflicting testimony itself demonstrates that Ms. Easley did not have an adequate awareness of her surroundings when she attempted to cross. Indeed, we find it manifestly certain that a pedestrian exercising ordinary care for her own safety would discern whether a vehicle was stopped to let her pass in front, or at least, that the driver had acknowledged she was attempting to cross in front of him. Certainly such caution should be exercised in a situation where, as here, the pedestrian at issue was otherwise acting to step off the curb between two vehicles, and was doing so outside of any crosswalk. Moreover, Ms. Easley was also apparently unaware that the stoplight had turned green as she was stepping into the street. As a result, we conclude that the circumstances of the instant case demonstrate that Ms. Easley did not exercise ordinary care for her own safety.

In summary, Ms. Easley failed to yield the right of way to Mr. Haynie, stepped into a significantly trafficked roadway between two vehicles without taking proper notice of her surroundings, and did so despite a nearby available stoplight and crosswalk.

Remarkably, Ms. Easley attempted to pass in front of Mr. Haynie even though she was unsure if he could see her. In light of the foregoing, we conclude that the evidence preponderates against the trial court's determination that Ms. Easley is only 10% at fault. Veritably, the evidence demonstrates considerably more fault on the part of Ms. Easley, and as such, we conclude that Ms. Easley is, at least, 50% at fault in this matter. Because our conclusion concerning the allocation of fault bars Ms. Easley from recovering, all other issues raised on appeal, to the extent not addressed herein, are pretermitted.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's final judgment, dismiss the case, and remand this matter to the trial court for further proceedings consistent with this Opinion.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE
